UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALLEN CHUKWUHDI AKA/ ALLEN C.
DAWSON,

                    Plaintiff,

                -against-

THE CITY OF NEW YORK,

                    Defendant.

1:25-CV-0673 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

Plaintiff Allen Chukwuhdi, also known as Allen C. Dawson, who is appearing *pro se*, filed this action in which he sues the City of New York asserting claims arising from its alleged failure to enforce laws against Plaintiff's landlord regarding the purported lack of heat, faulty wiring, lack of repairs, and lack of other building services in Plaintiff's apartment building, as well as arising from the allegedly illegal subdivisions within that building. Plaintiff seeks damages and, perhaps, injunctive relief. Because Plaintiff asserts what appear to be claims of violations of his federal constitutional rights, the Court understands this action as brought under 42 U.S.C. § 1983.

By order dated January 28, 2025, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses this action.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also

dismiss a complaint when the court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id*. (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id*. at 679.

**BACKGROUND**

Plaintiff alleges the following in his complaint:[1] Plaintiff is a rent-stabilized tenant who "resides on the top or third . . . floor of a brownstone in []Central Harlem." (ECF 1, at 1.)

---

[1] The Court quotes from Plaintiff's complaint verbatim. All spelling, grammar, and punctuation are as in the complaint unless noted otherwise.

Plaintiff's building was originally "designed and intended to be a six to eight unit [with single-room occupancy] but was illegally converted into four . . . Class A apartments." (*Id.*) Because of this "illegal conversion, the premises [is] illegal . . . [as] it has no 'Certificate of Occupancy.'" (*Id.* at 2.) The building also has "numerous . . . [other] open violations including C violations because the landlord removed the []boiler[] primary heating system and as a result Plaintiff has been without heat and other repairs for fifteen years." (*Id.*) Plaintiff states that his "roof leaks into . . . [his] apartment as well as [in] the common area of the building outside Plaintiff[']s front door." (*Id.*) In addition, "even though the building has faulty wiring[,] it has somehow never been subjected to a full inspection by the . . . [the] City of New York." (*Id.*)

> Plaintiff states that:
>
> there have been numerous housing maintenance complaints [made] via 311 by . . . Plaintiff and the other tenants, and . . . Plaintiff has written many letters to the [C]ommissioner[] of [the New York City Department of Housing Preservation & Development ("HPD")] and [the New York City] Mayor's [O]ffice about the lack of heat, faulty wiring, lack of building services including garbage removal, roof leaks, broken access door at the entrance of the building, intercom not working, and etcetera but somehow these problems still exist.

(*Id.*)

Plaintiff's "landlord, Anthony Mehran, who is the proprietor of Contempo Acquisitions, LLC[,] has signed numerous []Court[] stipulations wherein he promises to provide heat and effect repairs within . . . thirty days—most recently on March 6, 2022, and June 28, 2022— . . . [but] nothing has changed." (*Id.*) Plaintiff's building "has been enrolled in the HPD['s] []Alternative Enforcement Program[] (AEP) for the last four . . . years [but] . . . . Plaintiff is still without heat and the building is still without repairs." (*Id.*) Plaintiff believes that:

> the landlord is using non-repair in an effort to drive him from the rent stabilized apartment and has either paid or otherwise persuaded HPD [and] the [New York City Department of Buildings ("DOB")] and its inspectors, operatives, employees,

and agents to look the other way and in so doing have violated Plaintiff['s] right to [] Equal Protection under the Law[].

(*Id.*)

Plaintiff asserts that the City of New York, specifically, HPD and DOB, and "as yet unspecified actors, agents, employees and operatives of the defendant, as well as other coconspirators, are suffused in either incompetence and/or corruption and that . . . [they] ha[ve] violated Plaintiff['s] rights." (*Id.* at 1.) He wonders if race, class, or ethnicity have played "a part in the City's ineffectuality in this and/or similar matters," whether there is "an organized crime element in New York real estate that needs to be expunged," "why are the []Housing Courts[] futile," and "why aren't the laws being enforced." (*Id.* at 3.)

Plaintiff asks for the Court's "assistance in this matter and assert[s] that [he has] been damaged and ask[s] that in addition to the repair[,] [that] the []Court[] make [him] whole by granting [him] monetary relief in an amount that is just and proper." (*Id.*)

## DISCUSSION

The Court must dismiss Plaintiff's claims under 42 U.S.C. § 1983 against the City of New York. When a plaintiff sues a municipality, like the City of New York, under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing: (1) the

4

existence of a municipal policy, custom, or practice, and; (2) that the policy, custom, or practice

caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691

F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397,

403 (1997) (internal citations omitted).

A plaintiff may satisfy the policy, custom, or practice requirement by alleging one of the

following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that
> caused the particular deprivation in question; (3) a practice so consistent and
> widespread that, although not expressly authorized, constitutes a custom or usage
> of which a supervising policy-maker must have been aware; or (4) a failure by
> policymakers to provide adequate training or supervision to subordinates to such
> an extent that it amounts to deliberate indifference to the rights of the those who
> come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted).

If there is no underlying constitutional violation, however, the Court need not examine whether

the municipality is liable under Section 1983. See *Segal v. City of New York*, 459 F.3d 207, 219

(2d Cir. 2006).

Plaintiff alleges no facts showing that a policy, custom, or practice of the City of New

York caused the alleged violation of his federal constitutional rights. Even if Plaintiff were able

to, he would not be able to state a claim under Section 1983 against the City of New York

because, as discussed below, there is no underlying constitutional violation. The Court therefore

dismisses Plaintiff's claims under Section 1983 against the City of New York for failure to state

a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Segal*, 459 F.3d at

219.

**A.      No right to housing under federal law**

The Court understands Plaintiff's complaint as asserting that the City of New York violated Plaintiff's purported federal constitutional right to safe and sanitary housing. There is no right, under the United States Constitution, however, to housing or to safe and sanitary housing. *See generally Lindsey v. Normet*, 405 U.S. 56, 74 (1972) ("We do not denigrate the importance of decent, safe, and sanitary housing. But the Constitution does not provide judicial remedies for every social and economic ill. We are unable to perceive in that document any constitutional guarantee of access to dwellings of a particular quality. . . ."). Accordingly, no government entity, including the City of New York, has any "obligation to provide adequate housing" under the federal constitution. *Richardson v. City of New York*, No. 12-CV-2545 (WHP), 2013 WL 2124176, at *2 (S.D.N.Y. Apr. 17, 2012) (internal quotation marks and citation omitted).

**B.      No duty under federal law to protect Plaintiff, investigate, or enforce laws**

The Court also understands Plaintiff's complaint as asserting, under Section 1983, claims against the City of New York that it failed to protect Plaintiff, investigate his concerns regarding his building, or enforce the relevant laws. There is generally no federal constitutional duty, however, requiring a government to investigate, protect an individual from harm, or enforce the law. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755-56 (2005); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); *Gong v. Sarnoff*, No. 23-CV-0343 (LJL), 2024 WL 3638335, at *7 (S.D.N.Y. Aug. 1, 2024) ("It is settled that the State has no general Due Process obligation to ensure the safety, care, and protection of individuals who are not in its custody. Also, [i]t is well established that [t]here is no constitutional right to an investigation by government officials." (internal quotation marks and citations omitted, alterations in original)); *Hirsh v. City of New York*, 300 F. Supp. 3d 501, 511 (S.D.N.Y. 2018) (Ramos, D.J.) ("[T]he Court concludes that Plaintiff has not plausibly alleged constitutional

violations based on the allegation that the City abdicated its duty to enforce its rules and regulations and train its employees to follow those rules."), *aff'd*, 751 F. App'x 111 (2d Cir. 2018) (summary order).

There are two recognized exceptions to this general rule: (1) "when [a government official] takes a person into [the government official's] custody and holds him there against his will, the Constitution imposes upon [the government official] a corresponding duty to assume some responsibility for his safety and general well-being," *DeShaney*, 489 U.S. at 199-200; and (2) when a state actor affirmatively creates or increases a danger to the plaintiff, *see, e.g.*, *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008). In this context, the plaintiff must also show that the government official's "behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (citation omitted).

Plaintiff does not allege that the City of New York or any of its employees took him into custody or that it affirmatively created or increased a danger to him. In addition, Plaintiff alleges nothing to suggest that the City of New York's or any of its employees' alleged behavior was so egregious or outrageous as to shock the contemporary conscience.

Accordingly, the Court dismisses Plaintiff's claims under Section 1983 against the City of New York.

## C.    Leave to amend is denied

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

The Court dismisses this action for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court directs the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

SO ORDERED.

Dated:   February 19, 2026
         New York, New York

_____
                  Louis L. Stanton
                  U.S.D.J.

8